IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VICKI L. HAMILTON-ELLIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-CV-695-PJC |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Claimant, Vicki L. Hamilton-Ellis ("Hamilton"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Hamilton's application for disability benefits under the Social Security Act. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Hamilton appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Hamilton was not disabled. For the reasons discussed below, the Court **REVERSES AND REMANDS** the Commissioner's decision.

**Claimant's Background**

Hamilton was 50 years old at the time of the hearing before the ALJ on April 25, 2008. (R. 26). She completed eleventh grade and never obtained a GED. *Id.* She had not worked since her date of onset, April 13, 2005, which was the date Hamilton was in a car accident. *Id.* She testified that the primary reason that she could not work full time was problems with her

1

right shoulder, arm, and hand. (R. 26-27). She had surgery and she had six screws in her arm. (R. 27). She was limited in what she could do with her right arm, and one example was that she could not use her right hand to shampoo her hair. *Id.* She could extend it by forcing it, but that movement was painful. (R. 27-28). Lifting anything was painful, her right hand tingled, and she dropped things. (R. 29). At the time of the hearing, Hamilton was wearing a brace on her right arm that had recently been prescribed by the physician, who was going to reassess her arm and the screws in the near future. *Id.* The pain was in both the arm and shoulder, and moving the arm increased the pain. *Id.*

In addition to her problems with her right shoulder, her left shoulder sometimes hurt. (R. 31). She had surgery on her neck, but it only caused her trouble with weather changes such as rainy or snowy weather. (R. 32). She had lower back pain that she described as a sharp pain that would shoot through her thighs to her knees. *Id.* Surgery on her hip had caused her to have a limp, which affected her ability to walk. (R. 33). She had good days and bad days, and on bad days she could make it up stairs, although she would crawl if she had to. *Id.* She also had headaches that she stated had occurred after she had eye surgery fifteen to twenty years previously. (R. 34). She estimated her pain most of the time to be around 6 or 7 on a scale of 1 to 10, but it sometimes was worse. (R. 37).

Hamilton estimated that she could walk for 30 minutes and she could stand for about 20 minutes before her back and her hip would start to hurt. (R. 34-35). She could sit for about 30 or 40 minutes. (R. 35). She was most comfortable lying down with her feet propped up. *Id.* She estimated that she spent between 25 to 40 percent of her day either lying down or with her feet propped up. *Id.* While that position didn't ease the pain from her right arm, it did ease the pressure on her legs. *Id.* Some days she could squat or kneel, but other days she could not squat

2

if she was experiencing the shooting pain in her lower back. (R. 36).

Hamilton went to bed from 10 p.m. to 6 a.m., but she estimated that she was only asleep about five out of those eight hours. *Id.* One reason was that she had to urinate frequently due to her blood pressure medication. *Id.* She had difficulty doing chores around the house due to her limited use of her right arm and the pain that she experienced. (R. 37-40). Pain sometimes interfered with her ability to concentrate. (R. 40).

Hamilton was seen at the Saint Francis Emergency Room on April 14, 2005, following a car accident. (R. 159-73). Her chief complaint was upper and lower back pain. (R. 161).

Hamilton was seen at Warren Clinic for an office visit on June 27, 2006, where her history of having a car accident approximately one year earlier with an MRI that showed rotator cuff tear was recounted. (R. 208-11). The history also stated that Hamilton had received injections which had helped. (R. 208). The exam noted that Hamilton had marked decrease in range of motion of her right shoulder with pain for all range of motion. (R. 210). The assessment said that Hamilton had possible rotator cuff tear and partial frozen shoulder on her right side, and she was referred to an orthopedic specialist. (R. 211). An MRI on July 11, 2006 showed findings consistent with rotator cuff tear. (R. 185).

On August 29, 2006, Hamilton saw Jay D. Lorton, M.D. at Eastern Oklahoma Orthopedic Center, and on examination Dr. Lorton found weakness and pain elicited with rotator cuff testing. (R. 200). Dr. Lorton stated that Hamilton wanted to proceed with scheduling right shoulder arthroscopy with rotator cuff repair. *Id.* Hamilton had surgery on September 1, 2006, with the preoperative and postoperative diagnosis being right shoulder impingement syndrome with partial rotator cuff tear. (R. 194-95). At a September 19, 2006, post-operative appointment, Dr. Lorton thought Hamilton looked good, and he stated that physical therapy

would be started. (R. 190). On October 17, 2006, Hamilton saw Dr. Lorton, and he recounted that Hamilton had not started physical therapy because she was told that she was too stiff. (R. 276). Dr. Lorton gave an injection of lidocaine and told Hamilton to start physical therapy. *Id.* On November 7, 2006, Dr. Lorton noted some improvement, but he stated that more improvement was needed. (R. 275). On December 7, 2006, Dr. Lorton diagnosed Hamilton with frozen shoulder with arthrofibrosis, and he recommended that she undergo manipulation under anesthesia. (R. 274).

Hamilton apparently went to Warren Clinic urgent care on March 23, 2007, with a complaint of right shoulder pain with edema of the right forearm and fingers. (R. 237). The record indicates that it had been recommended that Hamilton undergo a second surgery but had refused. *Id.* Hamilton was now complaining of increased pain with swelling. *Id.* A second visit to the Warren Clinic urgent care on September 26, 2007 appears to have been for similar reasons. (R. 236).

In October 2007, Hamilton was evaluated for numbness and tingling in her right hand, which the physician described as "median nerve distribution." (R. 272-73). The physician assessed right carpal tunnel syndrome, and he recommended wrist bracing and neurodiagnostic testing, with further evaluation after the testing. *Id.*

On January 18, 2008, Hamilton was seen at Warren Clinic urgent care for complaints of knee pain, hand pain, "spots" on legs, and swelling. (R. 233). At an appointment with Dr. Koch on February 7, 2008, Hamilton was diagnosed with bilateral knee pain and elevated blood pressure. (R. 231-32). X-rays taken on March 4, 2008 showed no significant radiographic abnormalities of Hamilton's knees. (R. 263).

G. Bryant Boyd, M.D., an agency consultant, performed an Internal Medicine

4

Examination on April 7, 2006. (R. 174-81). Dr. Boyd recounted that Hamilton's chief complaint was swelling and pain in both hands. (R. 174). Dr. Boyd also noted that Hamilton stated that her hip occasionally hurt where the bone graft was taken for her earlier cervical bone fusion. (R. 175). Dr. Boyd stated that Hamilton's grip was normal and equal bilaterally, and that examination of both hands revealed no evidence of arthritis, swelling, or abnormal motion restriction. *Id.* His impressions were complaint of bilateral hand pain, C5-C6 cervical fusion, right forearm fracture in the remote past, and history of hypertensive blood pressure readings. *Id.* On the range of motion evaluation charts and the hand/wrist sheet, Dr. Boyd wrote "OK" for all items. (R. 178-80). On the back sheet, Dr. Boyd again noted that everything was "OK," or normal, and he noted no pain, tenderness, or muscle spasm. (R. 181). A Case Analysis dated April 14, 2006, by a non-examining agency consultant who cited to Dr. Boyd's examination indicated that Hamilton's condition was non-severe. (R. 183).

Upon Hamilton's request for reconsideration after the initial denial of her application, a non-examining consultant completed a Physical Residual Functional Capacity Assessment on March 7, 2007. (R. 222-29). Citing some of the records relating to Dr. Lorton's treatment of Hamilton, the consultant found Hamilton's exertional RFC to be consistent with light work. (R. 223-24). The consultant found one postural limitation in that Hamilton could only occasionally climb on ladders. (R. 224). The consultant found a manipulative limitation in Hamilton's ability to reach in all directions. (R. 225). He found no other limitations. (R. 225-29).

## Procedural History

On January 25, 2006, Hamilton filed an application for disability insurance benefits, followed by an application for supplemental security income benefits on October 10, 2006 under Title II, 42 U.S.C. § 401 *et seq.* (R. 91-99). In these applications, Hamilton alleged disability

5

beginning April 13, 2005.  Hamilton's applications for benefits were denied in their entirety initially and on reconsideration. (R. 52-55, 64-69).  A hearing before ALJ Lantz McClain was held April 25, 2008, in Tulsa, Oklahoma. (R. 21-47).  By decision dated May 30, 2008, the ALJ found that Hamilton was not disabled at any time through the date of the decision. (R. 11-17).  On September 25, 2008, the Appeals Council denied review of the ALJ's findings.  (R. 1-4).  Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. § 404.981.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. § 404.1520.[1] *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988)

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510.  Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings").  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the

6

(detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id., quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

**Decision of the Administrative Law Judge**

The ALJ found that Hamilton met insured status through September 30, 2010. (R. 13). At Step One, the ALJ found that Hamilton had not engaged in any substantial gainful activity since her alleged onset date. *Id.* At Step Two, the ALJ found Hamilton had severe impairments of status post right rotator cuff repair surgery, carpal tunnel syndrome, status post cervical fusion at C5-C6, left arm tendon repair in 1994, and right arm surgery in 1998. *Id.* At Step Three, the ALJ found that Hamilton's impairments did not meet any Listing. (R. 13-14).

---

claimant, taking into account his age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

The ALJ determined that Hamilton had the RFC to perform light work with additional limitations of avoiding "work above the shoulder level," and "constant use of the hands for repetitive tasks such as keyboarding." (R. 14). At Step Four, the ALJ found that Hamilton could not return to past work. (R. 16). At Step Five, there were jobs that a person with Hamilton's RFC could perform. (R. 16-17). Therefore, the ALJ found that Hamilton was not disabled at any time through the date of his decision. (R. 17).

## Review

Hamilton raises numerous issues on appeal, and the Court finds those issues to be troubling. However, it is clear that the ALJ's decision must be reversed because his credibility determination is legally insufficient. Because reversal is required based on this issue, Hamilton's other raised issues on appeal are not addressed.

Credibility determinations by the trier of fact are given great deference. *Hamilton v. Secretary of Health & Human Services,* 961 F.2d 1495, 1499 (10th Cir. 1992).

> The ALJ enjoys an institutional advantage in making [credibility determinations]. Not only does an ALJ see far more social security cases than do appellate judges, [the ALJ] is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion.

*White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001). In evaluating credibility, an ALJ must give specific reasons that are closely linked to substantial evidence. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); Social Security Ruling 96-7p, 1996 WL 374186.

> While a claimant's credibility is generally an issue reserved to the ALJ, the issue is reviewable to ensure that the underlying factual findings are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."

*Swanson v. Barnhart*, 190 Fed. Appx. 655, 656 (10th Cir. 2006) (unpublished), *quoting Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (further quotations omitted).

Hamilton cites to *Swanson*, and indeed, the credibility determination in *Swanson* is strikingly similar to that presented by the ALJ's decision here. *Swanson* condemned the language of the ALJ rejecting a claimant's testimony of limited activities of daily living because the ALJ had said that the testimony was not objectively verifiable. *Swanson*, 190 Fed. Appx. at 657. The Tenth Circuit quoted language which it found "troubling," and that language is virtually identical to wording in the ALJ's decision here:

> [E]ven if the claimant's daily activities were truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in the decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

(R. 15). The Tenth Circuit said this language did not comply with the requirement that the ALJ must cite to substantial evidence that is closely and affirmatively linked to the issue of credibility. *Swanson*, 190 Fed. Appx. at 657-68. The undersigned agrees with the Tenth Circuit's criticism that the terms "other reasons," "other factors," and "relatively weak," are "boilerplate" terms that "[fail] to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that [the claimant's] complaints were not credible." *Swanson*, 190 Fed. Appx. at 658, *quoting Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004).

Because the ALJ did not comply with the requirement that he give specific reasons for his credibility finding and that he link those reasons to substantial evidence, this case must be reversed and remanded for further proceedings. The undersigned urges the Commissioner to assure that future decisions of the Social Security Administration avoid using the boilerplate language that was used in the ALJ's decision here, in light of the Tenth Circuit's specific

disapproval of this language in *Swanson*. Additionally, although the other issues raised by Hamilton are not analyzed in this Order as stated previously, upon an initial review of the briefing, the undersigned was concerned that these issues appeared to have merit. Therefore, the undersigned urges that the Commissioner consider all of the issues raised by Hamilton when considering her applications on remand.

## Conclusion

Based upon the foregoing, the Court **REVERSES AND REMANDS** the decision of the Commissioner denying disability benefits to Claimant for further proceedings consistent with this Order.

Dated this 18th day of December, 2009.

_____
Paul J. Cleary
United States Magistrate Judge